UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LEE J MONLEZUN JR ET AL** | **CASE NO.  2:22-CV-05746** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM RULING

Before the Court is a "Motion *IN LIMINE* and Motion for Partial Summary Judgment on Coverage A" (Doc. 28) filed by Defendant, State Farm Fire & Casualty Company ("State Farm").  In its Motion, State Farm moves to exclude the KDF Enterprises estimate in its entirety, the line items for pack out included in the Skyline Adjusters estimate, and any line items related to completed repairs. Additionally, State Farm moves to dismiss any claims for more than what Plaintiffs paid for pack out, interior repairs, fencing and chimney repairs.

### FACTUAL STATEMENT

On August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana, and on October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana. Plaintiffs filed the instant lawsuit alleging that both Hurricanes damaged their property, including their personal property.[1]

Plaintiffs allege that State Farm failed to pay the amounts owed to them under the insurance policy issued.

---
[1] Doc. 1-2.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

State Farm argues that because Dr. and Mrs. Monlezun both testified that repairs to their home had been completed, the Court should exclude the KDF Enterprises, LLC estimate of $104,606.01[2] to "pack out" and "pack in" their contents while repairs were being made and any line-item estimates for pack out. State Farm argues that any line-item estimate for interior repairs, the brick fence and the chimney must be excluded because those repairs have been completed. Finally, State Farm moves to dismiss any claims seeking more than what was in fact spent on pack out or on certain completed repairs.

*Line-item estimates for interior repairs, brick fence, and chimney*

State Farm moves to exclude any theoretical estimates related to completed interior repairs, and repairs to the brick fence and chimney because those repairs have been completed. Specifically, State Farm seeks to remove or exclude the following line-items repair estimates: (1) $25,663.30 for the "Right Chimney" in the Skyline estimate; (2) $40,402.54 for "R&R Masonry fireplace & chimney" in the Damages Report; (3) "OPEN ITEM" for "Additional Fencing/Brick Wall Damage";[3] (4) $54,760 for brick fence; and (5) $16,149.44 for "LR Entry" [Foyer/Entry] in the Skyline estimate.[4]

---

[2] Defendant's exhibit C. Mrs. Monlezun testified that the estimate was so high because she had a baby grand piano, a harp, a chandelier, and several antiques and collectibles. Defendant's exhibit A, Anne Monlezun deposition, p. 65.
[3] This line-item has no dollar value.
[4] Defendant's exhibit E, Skyline estimate dated June 18, 2024, pp. 3-8.

State Farm relies on the deposition of the contractor who performed repairs on the home, Glenn Vanicor, who testified that repairs to the brick fence and chimney had been completed—to his knowledge.[5] He also testified that to his knowledge all interior damage to the home had been repaired.[6]

Plaintiffs obtained estimates from Matt Serfoss of Damage Reports who estimated a total of $829,171.20 for repairs to the home.[7] Jeffrey Major of Skyline Adjusters LLC estimated that the actual cash value ("ACV") for repairs to the home would be $451,292.05.[8] State Farm relies on Dr. Monlezun's deposition testimony to argue that there are no further repairs to be made to the interior of the home. As such, State Farm moves to exclude from the estimate any amounts for interior repairs, brick fence, and brick chimney.

Plaintiffs argue that State Farm has not considered Plaintiffs' entire testimonies. For example, Dr. Monlezun testified that State Farm had paid a little over $45,000,[9] which Plaintiffs used, plus an additional approximately $200,000-$300,000 to make the home livable.[10] He also testified that there were stains coming out around a chandelier in the front room,[11] which he suspected was from a continuous water intrusion.[12] Dr. Monlezun also explained that he and Mrs. Monlezun were having upper respiratory or pulmonary

---

[5] Defendant's exhibit F, Glenn Vanicor deposition, p. 75.
[6] *Id.* p. 76.
[7] Defendant's exhibit F, Damages Report, p. 24.
[8] Plaintiff's exhibit E, p. 66. This amount is less the applicable depreciation of $12,850.
[9] Plaintiffs' exhibit A, Lee Monlezun deposition, p. 66:14-15.
[10] *Id.* p. 65.
[11] *Id.* p. 58.
[12] *Id.* p. 60.

complications, which he thought was from bacteria or mold that was in the home.[13] In his prior testimony, Dr. Monlezun testified that if any sheetrock had to be replaced, the cypress wood would have to be removed to make that replacement. He also testified about additional landscaping that needed to be done, and exterior painting around windows and doors.[14] Dr. Monlezun testified that there was additional repairs needed for the outside brick fence,[15] and there was concern for interior damage in the chimney that allowed water to come in the den, the exterior brick cladding and chips/cracking on the roof shingles.[16] Finally, Dr. Monlezun testified that he was still awaiting a report from Jeff Majors and Skyline Adjusting who were inspecting both the interior and exterior of the home.[17]

Mrs. Monlezun also testified that there were still cracks in the brick fence that had not been repaired,[18] mildew around the entrance chandelier,[19] wiring to outside light-posts driveway still needed to be repaired.[20] She also testified that all water stains on the ceilings were painted over,[21] but the damage was still there.[22] Here, it appears that Plaintiffs were content with painting over the stains just to make the home livable, but knew that there was damage to the sheetrock that needed to be repaired further. Specifically, Mrs. Monlezun testified that "we treated everything and painted over it. So the damage is still there. It's

---

[13] *Id.* pp. 60-61.
[14] *Id*. pp. 62-63.
[15] *Id.* p. 65.
[16] *Id.* pp.72-73.
[17] *Id.*
[18] Plaintiff's exhibit C, p. 53-54.
[19] *Id.* p. 57.
[20] *Id.* p. 60.
[21] *Id.* p. 58.
[22] *Id.* p. 68.

just I couldn't live that way."[23] Additionally, she testified that "the dome, I mean just the dome in the house, to take that out and repair it, it's going to be a nightmare. But I'm worried that we're going to have to end up doing it because there's, we think, mold growing back"[24]

Mrs. Monlezun also testified that the den was not totally repaired as follows:

Q. When you say the den is not totally repaired and that there's some areas that are chipped, what are you specifically referring to?

A. On the ceiling around the edges and all. The Sheetrock. It's like a Sheetrock ceiling with wood beams going across. Well, we left it because in order to really properly fix it you have to take the beams down. Ad we don't want – I don't want them to do that, you know, you're looking at a big major deal to do financially and inconvenient.

Q. So what's chipped? The beams themselves?

A. No. The Sheetrock.

Q. The Sheetrock is chipped?

A. They did put the little light fixture back that had popped out, but it's still chipped around the edge of the light fixture where the light fixture was. And then there's just all kind of areas all around the room that have either cracks or chips in it.[25]

The Court has reviewed the summary judgment evidence and finds that Plaintiffs has established that there is a genuine issue of fact for trial as to any additional repairs, both interior and exterior.

---

[23] *Id.* p. 68:6-8.
[24] *Id.* p. 68:9-13.
[25] Plaintiff's exhibit B, Anne Monlezun depo., pp. 86:20-87:15.

*Pack out*

State Farm moves to exclude the KDF Enterprises estimate for pack out and any line items within the Skyline estimate for pack out because Plaintiff incurred no actual costs to pack out. State Farm argues that Plaintiffs and their contractor, Vanicor, testified that only the exterior repairs remained and thus any pack out of any contents are unnecessary. Additionally, Vanicor testified that he did not charge Plaintiffs for covering and moving the contents from room to room while he was making the interior repairs.[26] State Farm further contends that the pack out expenses should be excluded because Plaintiff do not intend to make additional repairs.

Plaintiffs maintain that they are entitled to $104,000 for pack out expenses based on their testimony that "additional repairs and pack out costs could still be incurred."[27] State Farm contends that Plaintiffs are not entitled to pack out expenses because Dr. Monlezun testified that he and his wife "determined real quick that we were not going to pack out of here." We were going to live here."[28] State Farm also refers to Dr. Monlezun's testimony concerning the person[29] who made the estimate to pack out the personal contents, and Dr. Monlezun's opinion that he was a "go-getter and a salesman."[30]

Plaintiffs argue that because Plaintiffs have submitted an estimate for additional repairs by Jeffrey Major of Skyline Adjusters LLC, it would be premature to exclude any costs to pack out the contents, considering that repairs are not complete. The Court agrees

---

[26] Defendant's exhibit F, Vanicor deposition, p. 76.
[27] Doc. 54, p. 8.
[28] Defendant's exhibit B, Lee Monlezun deposition, p. 3, Doc. 28-5.
[29] KDF Enterprises LLC prepared an estimate to pack out the contents of the home during repairs.
[30] *Id.*, pp. 4-5.

that it would be premature to exclude evidence as to the cost of pack out, considering the previous finding that there is a genuine issue of material fact for trial as to interior and exterior repairs.

*Limit claims to repair costs where repairs were completed*

The Court agrees that any estimates for repairs are irrelevant when those repairs have been completed. However, here there appears to be a dispute as to whether the painted over areas was a completed repair, or a quick fix to make the house livable. There is testimony that stains are appearing, obviously due to moisture in the sheetrock that a jury could find is damage from the Hurricane and in need of repair. Specifically, Plaintiffs have presented evidence via Dr. Monlezun's testimony that there is still water intrusion around the chimney. Additionally, as to the brick fence damage, there is testimony that the brick fence has not been completely repaired. It appears that some of the damage has been repaired and to that extent, State Farm will be allowed to present evidence to reduce these line-items. Therefore, the Court will not exclude these line-items at this time.

## CONCLUSION

For the reasons explained herein, the Court will deny State Farm's Motion *IN LIMINE* and Motion for Partial Summary Judgment on Coverage A (Doc. 28).

**THUS DONE AND SIGNED** in Chambers on this 30th day of October, 2024.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**