UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LEE J MONLEZUN JR ET AL** | **CASE NO. 2:22-CV-05746** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM FIRE & CASUALTY CO** | **MAGISTRATE JUDGE LEBLANC** |

### MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment on Bacteria" (Doc. 29), wherein Defendant, State Farm Fire & Casualty Company, ("State Farm") moves for judgment in its favor to preclude Plaintiffs from recovering any damages related to the alleged contamination or bacteria in their home. Also before the Court is a "Motion to Strike Affidavit of Martin Upchurch" (Doc. 59) filed by Plaintiffs for failure to comply with Rule 56(c)(4) and Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure; this affidavit[1] was filed by State Farm in support of the instant Motion for Partial Summary Judgment.

### BACKGROUND

On August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana, and on October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana. Plaintiffs filed the instant lawsuit alleging that both Hurricanes damaged their property, including their personal property.[2]

---
[1] Doc. 29-8.
[2] Doc. 1-2.

Plaintiffs allege that State Farm failed to pay the amounts owed to them under the insurance policy issued.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v.*

*Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

State Farm argues that the relevant policy excludes coverage for contamination and pollution. State Farm also moves to exclude Plaintiffs' expert report/opinions as irrelevant and thus inadmissible because the inspection took place nearly four years after the Hurricane.

*Motion for Summary Judgment*

State Farm remarks that the inspectors noted that the contamination could have occurred any time after the Hurricane given ongoing water intrusions the home was experiencing.[3] State Farm also notes that the expert report does not provide an answer as to the cause of the contamination, i.e., construction defect, Hurricane related, etc.

More significantly for this Court to consider is the policy exclusions as to pollutants and/or contaminants. State Farm remarks that Plaintiffs' expert, Ken Larsen, concluded that the substances identified are contaminants or pollutants. In pertinent part, the policy provides the following:

> **SECTION I – LOSSES NOT INSURED**
>
> **2.** *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regards, of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss;

---

[3] Defendant's exhibit C, DSI Report, p. 10.

or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises,* arises from natural or external forces, or occurs as a result of any combination of these:

***

j.   contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source. This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in **SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY.**

(1) Contaminants and pollutants include but are not limited to any:

(a) solid, liquid, gaseous, or thermal irritant, including smoke form agricultural smudging or industrial operation, smog, soot, vapor, fumes, acids, alkalis, chemicals, pathogens, or noxious substances;
(b) contaminants or pollutants resulting from any natural resource extraction activities; or
(c) fuel oil except as specifically provided in **SECTION I – ADDITIONAL COVERAGES, Fuel Oil Release.**

(2) We also will not pay for:

(a) losses arising from contamination or pollution caused by or resulting from defective building materials, nuclear substances, and waste.  Waste includes material to be recycled, reconditioned, or reclaimed;

(b) the cost to extract contaminants or pollutants from land, water, or air, or the cost to remove, restore, or replace contaminated or polluted land, water, or air; or

(c) the cost of testing, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or assessing the effects of contaminants or pollutants[.][4]

State Farm moves to excluding the DSI Report as inadmissible and to dismiss Plaintiffs' claims for any damage caused by any pollutant and contamination because the

---

[4] Defendant's exhibit D, Policy, pp. 25-27 (pp. 14-16).

policy expressly excludes from coverage any damage caused by pollutants and contamination. State Farm informs the Court that Plaintiffs' experts conducted testing called adenosine triphosphate ("ATP") and found that the fluid present within the structure was between "Category 2" and "Category 3," or between "significantly contaminated" and "grossly contaminated."[5] These experts also noted that the presence of certain bacteria at the property solidified their conclusion that the water was contaminated.[6]

The Court agrees with State Farm that the policy clearly and unambiguously excludes damage resulting from contaminants and pollutants, and therefore any contractual damages must be dismissed.

Regarding extracontractual damages, State Farm argues that the Court should dismiss these damages as well. State Farm contends that Plaintiffs will be unable to show that any alleged bacteria in their home is the result of State Farm hindering their repair efforts. State Farm relies on the evidence that shows that Plaintiffs were diligently repairing their roof but unable to identify the reason for the continuous water intrusion. Both Mr. and Mrs. Monlezun testified that they had several roofers inspect and make repairs to the roof to stop the water intrusion and was finally able get the issue resolved after the last roofer discovered an opening in the roof's system.[7] State Farm then argues that Plaintiffs have no evidence to establish that the alleged bacteria or contamination in their home is attributable to Hurricanes Laura or Delta. Finally, State Farm remarks that any difficulties

---

[5] Defendant's exhibit C, DSI Report, p. 17.
[6] *Id.*
[7] Defendant's exhibit A, Lee Monlezun deposition, pp. 18-21.

that Plaintiffs had with water intrusion was due to construction defects in the roof that was installed some 14 days prior to Hurricane Laura's landfall.

Plaintiffs argue that State Farm has failed to provide any expert evidence or testimony to prove that defective workmanship was the cause of the ongoing roof leaks versus 100 mph plus winds from Hurricane Laura. The Court notes that it is Plaintiffs' burden to establish causation and they have presented no summary judgment evidence to create a genuine issue of material fact for trial as to the cause or source of water intrusion that allegedly caused the bacteria. Furthermore, as noted by State Farm, Plaintiffs' expert, Ken Larsen wrote that "[a] determination of causation or source of water intrusion is beyond the scope of this assignment."[8] As such, the Court agrees with State Farm that Plaintiff will not be able to carry their burden of proof as to the cause of the bacteria. Without any proof of causation, Plaintiffs cannot show that any alleged bacteria in their home was caused by Hurricane Laura and the result of State Farm hindering their repair efforts.

*Motion to exclude Plaintiffs' expert report*

State Farm moves to exclude Plaintiff's expert report authored by Ken Larson on behalf of DSI on contamination.[9] State Farm argues that it is unreliable and irrelevant. On June 14, 2024, Ken Larsen and his assistant, Scott St. Jean, inspected Plaintiff's property for contamination. State Farm argues that the report is unreliable because the inspection took place nearly four (4) years post hurricane. See *Fields v. QBE Specialty Ins. Co.*, 2021

---

[8] Doc. 29-6, p. 4.
[9] Defendant's exhibit C, Doc. 59-4.

WL 1886327, at *4 (M.D. La. May 11, 2021) (finding experts methodology, an inspection that occurred three years after damages-causing event was unreliable).

State Farm remarks that the report expressly states that the contamination could have occurred any time after Hurricane Laura, considering the ongoing water intrusions the home was experiencing.[10] Specifically, the report states the following:

> The inspection of this property was conducted approximately 1380 days after the suspected water intrusion. Such a period in conjunction with suspected ongoing water intrusions is significant and can result in a change of category of water as it degrades in purity due to biological amplifications.[11]

The report concluded that the home did contain contamination from a range of between a general Category 1 to a grossly contaminated Category 3. However, as argued by State Farm, the author expressly stated that the report was "limited"[12] and "a determination of causation or water intrusion is beyond the scope of this assignment."[13] Accordingly, the Court finds that the report is irrelevant and should be excluded.

*Motion to Strike Affidavit of Martin Upchurch*

Plaintiffs move to strike the affidavit of Martin Upchurch. State Farm submitted the affidavit in support of its Motion for Summary Judgment on Bacteria. Plaintiffs contend that the affidavit should be stricken because it fails to comply with Rule 56(c)(4) and Rule 26(a)(2)(B). Specifically, Plaintiffs argue that the affidavit is void of any substance, background, papers and/or documents to support the conclusions made. Plaintiffs complain that it fails to (1) be based on personal knowledge, (2) set out facts that would be

---

[10] Defendant's exhibit C, DSI Report, p. 10.
[11] *Id.*
[12] *Id.* p. 1.
[13] *Id.* p. 4.

admissible in evidence, and (3) show that affiant is competent to testify on the matter stated. Plaintiffs also complains that it fails to comply with Rule 26(a)(2)(B) because it is not accompanied by a written report prepared and signed by the witness. Plaintiffs inform the Court that Martin Upchurch was not disclosed as an expert in State Farm's July 3, 2024, expert witness disclosure. Plaintiffs complain that State Farm failed to provide expert disclosures of Mr. Upchurch, and that Plaintiffs were never provided with a copy of Upchurch's report. The Court notes that State Farm's expert disclosure deadline is September 3, 2025.[14] Thus, Plaintiffs' complaint here is without merit.

As to Plaintiffs' remaining complaints, "[a]t the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be 'capable of being "presented in a form that would be admissible in evidence."'" *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018).

The Court has reviewed the affidavit and finds that it does not contain conclusions of law but states scientific facts such as: "Coliforms, including E. coli, are bacteria that are commonly found in the soil and in human or animal waste. Bacteria are contaminants, and some strains of E. Coli in particular can be a deadly pathogen;"[15] [b]oth gram-negative and gram-positive bacteria are contaminants and can be pathogenic."[16] Mr. Upchurch also declares that he is a Certified Industrial Hygienist who provides consulting services related to industrial hygiene/air quality.[17] The Court finds no basis in law to strike Mr. Upchurch's

---

[14] Scheduling Order, Doc. 43.
[15] Doc. 29-8, ¶ 5.
[16] *Id.* para 6.
[17] *Id.* ¶¶ 2 and 3.

affidavit. As to any relevant facts or legal conclusions, Mr. Upchurch predicates the fact that Escherichia coli ("E. Coli") was present at the Plaintiffs' property, with "it is my understanding." This "understanding" is just that... an understanding, not a confirmed fact, nor a legal conclusion.

## CONCLUSION

Because Plaintiff cannot carry their burden as to the cause of the alleged bacteria, and for the reasons explained herein, the Court will grant State Farm's Motion for Partial Summary Judgment on Bacteria (Doc. 29) and dismiss any claim, either contractual or extracontractual as to damage caused by bacteria. Additionally, the Court will exclude Plaintiffs' expert report authored by Ken Larsen on behalf of DSI. Also, finding no basis in law to strike the affidavit of Martin Upchurch, Plaintiffs' Motion to Strike (Doc. 59) will be denied.

**THUS DONE AND SIGNED** in Chambers on this 20th day of November, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**